IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 14-4072-CR-C-SRB |
| | ) |
| ALEX DURAND WILLIAMS-DAVIS, | ) |
| | ) |
| Defendant. | ) |

## **REPORT AND RECOMMENDATION**

Before the Court is the Motion to Suppress filed by defendant Alex Williams-Davis. Defendant moves to suppress all evidence produced by his illegal seizure and correspondingly illegal search of his car. The Government has filed suggestions in opposition. An evidentiary hearing on the motion was held.

## **Facts**

On October 21, 2014, Columbia Police Detectives Matt Gremore and Chris Papineau were patrolling at night in a high crime area of Columbia, Missouri, when they saw a vehicle that appeared to be driving at a high rate of speed. The vehicle was traveling on Lakeview Street approaching Fir Street. Detective Papineau pulled behind the vehicle and observed the vehicle fail to signal a right turn from Fir Street as it turned onto the Business Loop. At approximately 9:16 p.m. Detective Papineau initiated the police car's emergency lights to stop the vehicle. Inside the vehicle the detectives could view the driver and 2 other occupants, and noted the driver seemed to be looking an unusual amount of times in his rearview mirror and was slow to stop the vehicle. Detective Papineau believed that the actions of the driver of the vehicle were suspicious in nature. Based on what Detective Papineau believed to be suspicious behavior in conjunction with the high crime area of the stop, and the number of persons in the vehicle, Detective Papineau decided to request a canine unit respond to the location of the traffic stop.

After the vehicle pulled over, Detective Papineau approached the passenger side of the vehicle and Detective Gremore approached the driver side. As Gremore approached, the driver opened the door and started to exit, raising safety concerns for the Detectives, and prompting Detective Gremore to unholster his weapon and command the driver to stay in the car. Detective

Papineau recognized all three occupants of the vehicle. Detective Papineau recognized the driver as the defendant, Alex Durand-Davis, whom Det. Papineau also knew by his street moniker "AWOL," whom he considered to be "armed and dangerous" with a history of narcotics possession and distribution. Detective Papineau also recognized the front passenger Dushane Griffith, who he also considered armed and dangerous, and who had a recent arrest for possessing a concealed firearm. The right passenger, Vincent Barney, was someone Detective Papineau knew to have been involved in drug possession and resisting arrest.

Based on Griffith's weapon history, Detective Papineau ordered him out of the vehicle and patted him down for weapons, finding none. Detective Gremore identified the vehicle occupants and then went back to the police car and began checking the identifications of the occupants. Detective Gremore's check included checking the identification and driving statuses of the occupants, checking for outstanding warrants, caution information, etc. These checks were run through the computer in the police car and through radio communication with police dispatch. The computer in the police car was used to check internal Columbia Police Department information and police dispatch was used to check state and national databases, including MULES and NCIC. These checks were routine traffic stop procedure.

As Detective Gremore was checking identification information for the vehicle's three occupants, the canine unit arrived on the scene. This was approximately 6 ½ minutes into the traffic stop. Officer Gremore had not completed the identification checks at the time when the canine arrived, but briefly paused about 7 ½ minutes into the traffic stop to assist in removing the occupants of the vehicle, to allow a dog sniff of the vehicle. Officer Gremore testified that at the time he paused his computer records checks inside the patrol vehicle, he had yet to receive information from dispatch on all three occupants. Less than two minutes after initiating the dog sniff of the vehicle, the canine had alerted. At the time the canine alerted, the traffic stop had been initiated for less than 9 ½ minutes.

Based on the canine alert, defendant's vehicle was searched. In the armrest compartment the detectives located a sock with three loose 9mm bullets inside it. They also located a sock on the driver floorboard which contained numerous sandwich baggies, such as those used for drug packaging. A Ruger 9mm was located under the driver's seat. The weapon was fully loaded with one round in the chamber, and dispatch advised that the firearm had been reported stolen. Williams-Davis later admitted that the firearm was his.

2

## Discussion

A. <u>Did the dog sniff extend the duration of the traffic stop?</u>

The Supreme Court recently held in <u>Rodriguez v. United States,</u> 135 S.Ct. 1609, 1614 (April 21, 2015) that police may not "extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff." This ruling extends from the principle that the "[a]uthority for the seizure ends when tasks tied to the traffic infraction are – or reasonably should have been –completed." <u>Id.</u> A traffic stop becomes unlawful if it prolonged beyond the time reasonably required to complete the mission; that is the time reasonably required to address the traffic violation that warranted the stop, and to attend related safety concerns. <u>Id.</u> at 1614 -1615. The Court discussed the mission of a traffic stop as encompassing the typical "checking of the driver's license, determining whether there are outstanding warrants, and inspecting the automobile's registration and proof of insurance." <u>Id.</u> at 1615. The Court also specifically included "certain negligibly burdensome precautions in order to complete [the] mission safely." <u>Id.</u> at 1616. The Court held that the critical question as to whether a dog sniff during a traffic stop violates the Fourth Amendment, is not whether the dog sniff occurs before or after the officer issues the warning or ticket, but rather whether conducting the sniff adds time to the stop. <u>Id.</u> at 1619-1621.

Here the evidence is that the dog sniff was done before the traffic stop was completed. <u>Cf.</u> <u>Rodriguez,</u> 135 S.Ct. at 163 (prior to dog sniff officer had issued a warning and returned driver's documents). The video tape of the traffic stop shows when the canine arrived on the scene, Detective Gremore had not completed checking the identification of the occupants by radio with dispatch nor on the police car computer. Although Detective Gremore did pause during his checking of the identification of the vehicle occupants on the police car's computer, for approximately two minutes when the canine arrived to do a dog sniff, the evidence does not support that this pause in any way prolonged the duration of the traffic stop. Even if Detective Gremore had not paused for two minutes to assist with the dog sniff, the traffic stop would not have been concluded at 9 ½ minutes. At 9 ½ minutes when the dog alerted, Detective Gremore had still not received all information back from dispatch on the three occupants of the vehicle.

The facts here do not support Defendant's assertion that the dog sniff added any time to the traffic stop. The officers acted efficiently in identifying and checking information on the occupants of the vehicle, while also assuring their own safety. When the dog arrived on the

3

scene approximately 6 ½ minutes into the traffic stop, the detectives were still engaged in the mission of the traffic stop and could not have reasonably have been expected to have concluded the mission before the dog arrived, or before the dog alerted just 9 ½ minutes into the traffic stop.  The evidence shows that Defendant was not detained beyond the time that the mission or the traffic stop would have otherwise been concluded had the dog sniff not occurred.  The Supreme Court has specifically held that the Fourth Amendment can tolerate certain unrelated investigations during a traffic stop so long as these investigations do not measurably lengthen the roadside detention.  Id. at 1614 (citing Arizona v. Johnson, 555 U.S. 323, 327-328 (2009)).

   B. United States v. Rodriguez United States v. Rodriguez, 799 F.3d 1222 (8th Cir. Sept. 3, 2015).

Even if the Court were to find that the dog sniff in this case prolonged the duration of the traffic stop, the applicable law in the Eighth Circuit, at the time of the dog sniff, provided that a reasonable extension of a traffic stop to conduct a dog sniff, does not violate the Fourth Amendment, citing deminimus intrusion.  United States v. $404,905.00 in U.S. Currency, 182 F.3d 643 (1999), United States v. Alexander, 448 F.3d 1014, 1016-17 (8th Cir. 2006), United States v. Martin, 411 F.3d 998, 1002 (8th Cir. 2005), and United States v. Morgan, 270 F3d 625, 631-32 (8th Cir. 2001).  While this Eighth Circuit precedent as to deminimus intrusion has been overturned by the Supreme Court in the recent Rodriguez v. United States, 135 S.Ct. at 1609, decided just this year (2015), this holding has not been applied retroactively to exclude evidence in dog sniff cases conducted prior to this new 2015 Supreme Court case.  Rather, "[s]earches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule."  United States v. Rodriguez, 799 F.3d 1222, 1223 (8th Cir. Sept. 3, 2015) (citing (Davis v. United States, 131 S.Ct. 2419, 2423-2424 (2011)).

Thus, the law in the Eighth Circuit in 2014, the year the traffic stop in this case was made, is the applicable law to be applied to the facts of this case.  Rodriguez, 799 at 1222-1224.  In 2014, the constitutionality of dog sniffs was scrutinized according to United States v. $404,905.00, 182 F.3d at 648-49, and the cases and Eighth Circuit precedent that followed.  These cases held that a brief delay to employ a drug dog did not constitute an unconstitutional seizure, as long as the traffic stop was not unreasonably prolonged.  United States v. Rodriguez, 741 F.3d 905 (8th Cir. 2014).  This line cases "repeatedly upheld dog sniffs that were conducted minutes after the traffic stop concluded."  Id. at 906.  In the 2014 Rodriquez case, the delay of

4

seven or eight minutes was determined to be deminimus, and thus reasonable. Id. Here, while this Court does not believe that the traffic stop was extended in duration by the dog sniff, even if it was extended, it would have been for a period of no more than two minutes. There is no dispute that the canine dog arrived on the scene while Officers were still conducting checks on the computer in the police vehicle and with dispatch, and the dog alerted two minutes thereafter. A two minute extension of a traffic stop would most certainly be upheld by the binding Eighth Circuit precedent in 2014 at the time this traffic stop occurred.

## Conclusion

For the reasons set forth above, the Court finds that Defendant's Fourth Amendment rights were not violated by the dog sniff. The Court finds that the dog sniff did not extend the duration of the traffic stop, or alternatively, the two minute extension was deminimus and not improper under the Eighth Circuit precedent in effect in 2014 at the time of the search. In light of these findings, it unnecessary for the Court to address the Government's additional arguments of reasonable suspicion and inevitable discovery.

IT IS THEREFORE RECOMMENDED that defendant Alex Durand Williams-Davis's motion to suppress be denied [20].

Dated this 21st day of October, 2015, at Jefferson City, Missouri.

/s/ *Matt J. Whitworth*

MATT J. WHITWORTH
United States Magistrate Judge